UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOYCE LUIS,<br><br>    Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security Administration,[1]<br><br>    Respondent. | Case No. 4:16-cv-00192-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Joyce Luis's Petition for Review of the Respondent's denial of social security benefits, filed on May 9, 2016. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL HISTORY

Petitioner filed an application for Supplemental Security Income on September 13, 2012. This application was denied initially and on reconsideration, and a hearing was held on June 9, 2014, before Administrative Law Judge (ALJ) Gilbert Alejandro Martinez. After hearing testimony from Petitioner, a medical expert, and a vocational expert, ALJ Martinez issued a decision on July 25, 2014, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on March 4, 2016.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the amended onset date of June 22, 2013, Petitioner was fifty years of age. She completed the ninth grade. Her prior work experience includes work as a cashier, construction worker, waitress, cook, child monitor, and nurse aide.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged amended onset date of June 22, 2013.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's left shoulder disorder; arthritis of her knees; obesity; depression; and anxiety severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 1.00 for her musculoskeletal impairments and Listing 12.04 for affective disorder.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are credible. Here, the ALJ found Petitioner's complaints about the intensity and persistence of her pain not entirely credible. The ALJ reconciled the opinions of state agency physicians with the testifying medical expert, Kendrick Morrison, M.D. The ALJ gave the state agency physicians' opinions more weight than the testifying medical expert, based upon treatment history or inconsistencies with the record as a whole.

The ALJ next determined Petitioner retained the ability to perform light work, with limitations on lifting, carrying, pushing and pulling of 20 pounds occasionally and 10 pounds frequently, sitting a total of six hours and standing a total of six hours in an eight-hour work day; limited reaching with the left arm; avoidance of hazardous work

environments; and performing simple, routine, repetitive tasks with simple work related decisions. (AR 24.)

The ALJ found Petitioner retained the ability to perform her past relevant work as a cashier. Alternatively, the ALJ proceeded to step five. The burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ found Petitioner retained the ability to perform the requirements of representative occupations such as circuit board assembler, a light/unskilled job with 47,000 jobs available in the national economy. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

**MEMORANDUM DECISION AND ORDER - 4**

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's

**MEMORANDUM DECISION AND ORDER - 5**

credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

**1.  Physician Opinions**

Petitioner contends the ALJ erred by failing to give proper weight to Dr. Morrison's opinion, and failed to properly support his conclusion that the evidence of record does not support the opinion. Petitioner contends there is a lack of evidence in the record to support the ALJ's rejection of Dr. Morrison's testimony that Petitioner would not be able to stand more than 2 – 4 hours in an 8-hour work day.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. *Morgan v. Comm'r of Social Security*, 169 F.3d 595, 600 (9th Cir. 1999). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Alternatively, the ALJ may reject the opinion of a non-examining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Id.* (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982)).

Dr. Morrison was called to testify as a medical expert at the hearing before the ALJ. Dr. Morrison expressed the opinion that Petitioner's arthritis in both knees was moderate in reference to the medical evidence in the record. (AR 60.) Based upon his review of the medical records, Dr. Morrison testified that, in his opinion, Petitioner could sit 6 hours in an 8-hour workday, and stand for only 2 – 4 hours in an 8-hour work day. (AR 62-63.)

The ALJ agreed with most of Dr. Morrison's opinions, but rejected Dr. Morrison's conclusion regarding Petitioner's ability to stand, citing a lack of medical evidence to substantiate Petitioner's claims of disabling pain. Petitioner alleged severe pain in her knees caused by arthritis, as well as burning and itching discomfort in both feet. (AR 27.) X-rays taken of Petitioner's knees on December 13, 2012, indicated moderate osteoarthritis. (AR 27, 539.) The majority of the medical evidence of record concerned Petitioner's complaints of severe constipation and treatment for poor bowl motility. (AR 566 – 573.) Other than one set of x-rays taken in December of 2012, there was no other medical evidence to review regarding Petitioner's knees. (AR 28.)

The only testimony to support Dr. Morrison's restriction on standing was Petitioner's own testimony, which the ALJ found less than credible based upon lack of treatment, and the fact medical records did not document any complaints made by Petitioner to medical care providers regarding her pain, or treatment of her knee pain. (AR 27-28; 29- 30.) The ALJ noted that, if inability to pay was a factor, there was no evidence Petitioner sought treatment from medical sources that would provide treatment to low income individuals. (AR 30.) And finally, there was no indication Petitioner was taking medication for arthritis pain, which she apparently managed by conservative means. (AR 28.)

First, the Court notes Petitioner did not object to the ALJ's adverse credibility finding regarding the severity and limiting effects of Petitioner's reported pain. Second, the ALJ's inference that Petitioner's pain was not as disabling as reported in light of the fact she did not seek an aggressive treatment program is a permissible inference regarding the severity of the impairment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").

The ALJ then relied upon the above by concluding Dr. Morrison's assessment about Petitioner's ability to stand during the workday was not supported by the medical evidence of record. (AR 31.) Additionally, the ALJ credited the opinion of the state agency non-examining physician Dr. Song, who concluded in 2013 that Petitioner could

**MEMORANDUM DECISION AND ORDER - 8**

perform light work, including standing for 6 hours in an 8-hour workday. (AR 124-128; 32.) Dr. Song relied upon the December 2012 x-ray findings for his opinion. (AR 128.)

The Court finds the ALJ provided specific and legitimate reasons supported by the record as a whole for rejecting Dr. Morrison's opinion regarding Petitioner's ability to stand. Because the Court finds the ALJ's conclusions are free from legal error, the Court does not address Respondent's alternative argument of harmless error.

## 2. Residual Functional Capacity

Petitioner argues the ALJ erred by failing to include in the residual functional capacity her alleged need for unscheduled breaks during the workday due to her fecal incontinence. Petitioner contends that, even if her incontinence is considered non-severe, its limiting effects should have been factored into Petitioner's RFC assessment.

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id*.

Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at

**MEMORANDUM DECISION AND ORDER - 9**

1217. In other words, the ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

During the hearing, the ALJ questioned Dr. Morrison about Petitioner's fecal incontinence. He testified that, based upon the medication Petitioner was taking for her bowel hypomotility, incontinence "may happen on occasion, but I wouldn't think on any kind of a regular basis." (AR 61-62.) The state agency medical consultant discussed extensively Petitioner's treatment for chronic constipation, and despite the same, concluded Petitioner's RFC could support light work. (AR 125 – 128.) Thus, both physicians, aware of Petitioner's allegations of fecal incontinence and chronic constipation, were of the opinion it would have no effect upon her capacity to perform work.

Further, Petitioner testified that she experienced accidents due to her fecal incontinence once or twice a week during the daytime, but that most accidents occurred at night. (AR 66 - 67). The ALJ specifically noted this testimony in his written decision. (AR 25.) In June of 2012, Petitioner reported no constipation symptoms. (AR 486 – 87.) Petitioner reported in November of 2012 that, because she could not always take her medication to treat her bowel issues, she wore adult diapers, Depends, to manage her occasional incontinence. (AR 525.)

Here, the ALJ relied extensively upon the opinions of Dr. Morrison and the state agency physician with regard to the formulation of Petitioner's RFC. (AR 24, 30-32, 61 – 63, 70 – 74.) Although the ALJ noted Petitioner's occasional incontinence in his RFC

**MEMORANDUM DECISION AND ORDER - 10**

assessment, the ALJ determined that, despite the same, Petitioner did not have significant limitations caused by it. Based upon a review of the record as a whole, the Court concludes the ALJ's RFC finding properly incorporated the limitations identified by Dr. Morrison and the state agency physician, as they both were aware of Petitioner's allegations of fecal incontinence. Accordingly, any purported limitations (or lack thereof) caused by her incontinence were accounted for in the formulation of Petitioner's RFC.

3.  **Consistency with the Dictionary of Occupational Titles**

Petitioner contends the ALJ erred by failing to question the vocational expert regarding whether his testimony was consistent with the Dictionary of Occupational Titles (DOT). Petitioner's opening brief did not identify what testimony, specifically, was inconsistent with the DOT. In her reply brief, it appears Petitioner argues the ALJ questioned the vocational expert about the ability to sit while doing work as a cashier or a circuit board assembler, although those two positions are categorized as light work according to the DOT. Petitioner next asserts that any testimony by the vocational expert about the ability to sit while performing such jobs conflicts with the DOT, and that those conflicts were not reconciled as required.[2]

In making disability determinations, the Social Security Administration relies primarily on the DOT for "information about the requirements of work in the national economy." SSR 00–4p at *2. The Social Security Administration also uses testimony

---

[2] These arguments specifically identifying the unresolved inconsistencies between the vocational expert testimony and the DOT were not raised in Petitioner's opening brief. As a general rule, issues raised for the first time in a reply brief are waived. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n. 3 (9th Cir. 2004) (issues not raised in opening brief are typically deemed waived). For completeness, however, the Court will address the argument.

from vocational experts to obtain occupational evidence. *Id.* Although evidence provided by a vocational expert "generally should be consistent" with the DOT, "[n]either the [Dictionary of Occupational Titles] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." *Id.* Thus, the ALJ must first determine whether a conflict exists. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing *id.*) If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than on the DOT. *Id.* [3] However, if the ALJ fails to ask about an apparent conflict, such error is harmless if the record shows there is no conflict. *Id.* at n.19.[4]

Here, the ALJ directly questioned the vocational expert about consistency with the DOT. (AR 74-75.) The ALJ posed a hypothetical to the vocational expert, and based upon the hypothetical, the vocational expert opined such an individual could perform light work as a cashier or circuit board assembler. (*Id.*) The vocational expert indicated that his testimony was consistent with the DOT. (AR 75.)

The only conflict between the vocational expert's testimony and the DOT was elicited by Petitioner's attorney, based upon a hypothetical restricting an individual to

---

[3] SSR 00–4p unambiguously provides that "[w]hen a [vocational expert] ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] ... evidence and information provided in the [Dictionary of Occupational Titles]. SSR 00-4p. at 4. SSR 00–4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict. *Id.*; *see also Massachi*, 486 F.3d at 1152.

[4] Recently, the Ninth Circuit Court of Appeals decided *Lamear v. Barryhill*, ___ F.3d ___, 2017 WL 3254930 (Aug. 1, 2017), discussing the ALJ's duty to reconcile a discrepancy between a claimant's RFC and the DOT, and finding the error was not harmless in that case based upon the record before the district court. The Court reviewed *Lamear*, and found it inapplicable to the facts here, because the ALJ did question the vocational expert about consistency with the DOT.

**MEMORANDUM DECISION AND ORDER - 12**

standing a maximum of 4 hours in an 8-hour work day. (AR 75.) In response, the vocational expert identified representative occupations where cashiers, considered a light listing, would be able to sit for substantial periods during the day. (AR 75.)

However, the ALJ specifically rejected the opinion evidence and Petitioner's testimony about her inability to stand or walk for more than 4 hours in an 8-hour work day. Accordingly, there was no error and no failure to reconcile the vocational expert's testimony with the DOT concerning any conflict with the definition of light work.

## CONCLUSION

For the foregoing reasons, the Court will affirm the decision of the Commissioner. Accordingly, the Court need not reach Petitioner's arguments regarding remand or award of benefits.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, it is hereby **ORDERED** that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: **August 08, 2017**

Honorable Candy W. Dale
United States Magistrate Judge